**SO ORDERED.**

**SIGNED this 17 day of April, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

SHEARIN FAMILY INVESTMENTS, LLC,

    DEBTOR.                      CASE NO. 08-07082-8-JRL
                                         CHAPTER 11
_____

**SUPPLEMENTAL ORDER**

On March 18, 2009, this court, recognizing the need for an immediate resolution, entered a summary order allowing the joint motion to establish procedure for distribution of certain post-petition funds. The present order further outlines the court's reasoning for its finding that the claims of lien on funds were stayed by § 362 of the Bankruptcy Code.

**BACKGROUND**

The debtor filed for relief under Chapter 11 of the Bankruptcy Code on October 13, 2008. Throughout its case, the debtor has operated as a debtor-in-possession developing a condominium project in Indian Beach, North Carolina known as the Nautical Club (the "Nautical Club Project"). Centurion Construction Company, Inc. ("Centurion") was hired to perform as the general contractor for the construction of the Nautical Club Project. On February 18, 2009, this court approved post-petition financing from the lender RBC Real Estate Finance, Inc.

("RBC") in the amount of $8,000,000.00 to complete construction. The portion of the post-petition financing owing to Centurion was $830,144.15. Centurion's only means for completing the project was to pay certain key subcontractors whose contributions were vital to finishing construction.

Between December 2008 and January 2009, subcontractors, including Vision Painting, Inc., Gouras, Inc., and Carpets by Thad, Inc. (the "Lien Claimants"), served the debtor with notices of claims of lien on funds in the approximate amount of $796,116.09. The Lien Claimants were not among those subcontractors Centurion contemplated paying from its post-petition financing budget. The Lien Claimants argued that their liens on funds, which were served post-petition, were actually effective from their commencement of work on the project pre-petition. The Lien Claimants further argued that should the court find otherwise, it would allow the debtor to unfairly pick and choose who it would pay since no "key subcontractors" served notice of claims of liens on funds pre-petition. The debtor asserted that it could disregard the claims of lien on funds pursuant to the automatic stay. By court instruction, the parties submitted memoranda of law on the issue of whether the rights of the Lien Claimants arising from the notices of claims of lien on funds were stayed by § 362 of the Bankruptcy Code. Upon review of the submitted memoranda, North Carolina state law, and the Bankruptcy Code, this court held that claims of lien served post-petition were stayed by § 362.

## DISCUSSION

Two types of Mechanic's liens involving real property are authorized by North Carolina law: 1) A Claim of Lien on Real Property; and 2) A Notice of Claim of Lien Upon Funds. A Claim of Lien on Real Property, pursuant to N.C.G.S. § 44A-8, is for the benefit of parties who contract directly with the owner of the property being improved. However, first, second, and

2

third tier subcontractors are not in direct contract with a property owner, dealing instead with the general contractor. Although subcontractors find themselves "down the chain," statutory provisions protect their interests by allowing those in the first through third tiers to assert a lien upon funds owed to the contractor with whom they dealt if they furnished labor, materials, or rental equipment to the site of the improvement. N.C.G.S. § 44A-18.

Pursuant to N.C.G.S. § 44A-20, once notice of a claim of lien on funds has been received, the obligor has a duty to retain funds subject to the lien, up to the amount of the lien claimed. An obligor may be the owner, a contractor, or subcontractor in any tier who owes money to another for performance on a contract to improve real property. N.C.G.S. § 44A-17(3). If the obligor fails to reserve the funds and makes a payment against the interest of the lien claimants, then the obligor becomes personally liable to the lien claimants for the amount of the wrongfully distributed payments not exceeding the lien. N.C.G.S. § 44A-20(b).

Following this line of reasoning, the Lien Claimants argued that the debtor, as the obligor of the Nautical Club Project and having received notice of the claims of lien on funds, must reserve approximately $796,116.09 from the $830,144.15 post-petition financing allotted to Centurion. The Lien Claimants failed, however, to take into account the automatic stay operating within the debtor's bankruptcy case.

The debtor filed its Chapter 11 petition in October, 2008. At the time of filing, the automatic stay under 11 U.S.C. § 362 came into effect. Section 362(a)(4) stays any action to create, perfect, or enforce any lien against property of the estate. An exception to the rule is carved out by § 362(b)(3), which allows perfection of a lien to "relate-back" to the time of lien creation. Retroactive perfection thus supersedes the rights of the trustee or hypothetical bona fide purchaser to the extent that the strong arm powers are subject to perfection under § 546(b)

3

or perfection is achieved within the grace period of § 547(e)(2)(A). 3 Collier on Bankruptcy (15th ed. rev.) ¶362.03[6][a].   Here, the Lien Claimants did not fit the exception.  "Post-petition perfection of a lien is permitted by the [Bankruptcy] Code but post-petition creation of a lien is not." In re Kara Homes, Inc., 374 B.R. 542, 555 (Bankr. D. N.J. 2007); 11 U.S.C. § 546(b)(1)(A)-(B); 3 Collier on Bankruptcy (15th ed. rev.) ¶362.03[6] ("Under this provision, a creditor may not take a security interest or create a. . . statutory lien on property of the estate." (*citing,* United States v. Gold (In re Avis), 178 F.3d 718 (4th Cir. 1999)).

For purposes of this case, the linchpin is the time at which the lien was created or took effect, thereby vesting the Lien Claimants' rights in the funds.  While both a lien on real property and a lien on funds fall under the umbrella of N.C.G.S. § 44A, STATUTORY LIENS ON REAL PROPERTY Art. 2, they are decidedly different in terms of when they become effective.  A claim of lien on real property is created upon filing and perfection.  N.C.G.S. §§ 44A-11 & 12. Perfection relates back to the effective date, the time at which the first material or laborer arrived on the property site being improved. N.C.G.S. §§ 44A-10 & 11.  A lien on funds, however, "[i]s perfected upon the giving of notice of claim of lien upon funds in writing to the obligor. . . and *shall be effective* upon the obligor's receipt of the notice."  N.C.G.S. § 44A-18(6) (emphasis added).  Further, the statute creating the lien, N.C.G.S. § 44A-18(1), is written in the future tense: "A first lien subcontractor. . . shall be entitled to a lien upon funds which are owed to the contractor. . . ."  The text of the statute suggests that no lien arises until it is perfected by giving written notice and made effective by receipt. N.C.G.S. § 44A-18(6); *also see*, Con Co, Inc. v. Wilson Acres Apartments, Ltd., 56 N.C. App. 661, 665 (1982)(suggesting that a lien upon funds

4

is effective from notification). [1]

In re Excel Engineering, Inc., 224 B.R. 582 (Bankr. W.D. Ky. 1998), presents facts similar to the present case. Louisville and Jefferson County Metropolitan Sewer District ("MSD") was the obligor on a construction project known as the Anna Marie Drive Drainage Project. MSD hired Excel as the general contractor for the project, who in turn entered into an equipment lease contract with Job Rentals. Under its contract with MSD, Excel procured an indemnity bond to hold MSD blameless against claims of unpaid subcontractors. Approximately nine months into the project, Excel filed for bankruptcy. Six days after the bankruptcy petition was filed, Job Rentals filed a statement of lien against the construction project funds of MSD. The court reasoned that § 362(b)(3) carved out an exception for perfecting or maintaining perfection of an interest in property which existed at the time the bankruptcy was filed. Excel, 374 B.R. at 589. Since Job Rentals statement of lien was filed after the bankruptcy petition, it was not only prevented from enforcing the lien but was in violation of the automatic stay. Id.

Simply put, an interest in property of the estate against which a lien is asserted must be present pre-petition. Here, the Bankruptcy Code steps in and freezes rights where they stood at the time the bankruptcy was initiated, before the Lien Claimants accrued any property interests.

---

[1] Section 44A-20 is in essence a third type of lien against real property, a "wrongful payment of claim" lien. Section 44A-20 allows a subcontractor who has given notice of a claim upon funds to obtain a lien on real property when the obligor is also the owner of the improved property and payment to another party is made after notification. Under these circumstances, the subcontractor is on the same footing as a general contractor, and perfection in this instance would "relate back." However, in the present case, since the lien upon funds noticed post-petition never took effect, the wrongful payment claim is also precluded. Furthermore, § 44A-20 requires that funds be wrongfully distributed. At the time the Lien Claimants notified the debtor, no payment had been distributed against their interest.

5

The foregoing is an expanded explanation for the court's ruling on March 18, 2009, that the claims of lien on funds were stayed under § 362 of the Bankruptcy Code.

END OF DOCUMENT