**SO ORDERED.**

**SIGNED this 13 day of October, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| SHEARIN FAMILY INVESTMENTS, LLC, | 08-07082-8-JRL |
| DEBTOR. | CHAPTER 11 |

## ORDER

The matter before the court are the cross-motions for summary judgment regarding the following claims: T. Stewart Gibson (Claim Nos. 8 and 32), Leonard W. Edwards (Claim No. 15), Michael Hedgepeth (Claim No. 16), TayMay, LLC (Claim No. 17), BAC, LLC (Claim No. 17), Cagle and Locke Properties, LLC (Claim No. 20), G. Frank Cagle and Nancy N. Cagle (Claim No. 20), Ronald Davis Locke and Gayle T. Locke (Claim No. 20), Douglas and Roxanne Parsons (Claim No. 21), Berkley and Susan Skinner (Claim No. 22). A hearing took place in Raleigh, North Carolina on September 21, 2009.

Shearin Family Investments, LLC ("Shearin") filed a petition for relief under chapter 11 of the Bankruptcy Code on October 13, 2008. The debtor was the developer of a condominium project in Indian Beach, North Carolina, now known as the Nautical Club, which was to consist of two buildings. Building A has been completed, but construction has not yet commenced on Building B.

In or about 2005, prior to the development of the project, Shearin offered to sell condominium units to individual investors to fund a portion of the development and construction costs. A number of individuals paid the full purchase price requested for specific units, as follows:

| | | |
|---|---|---|
| T. Stewart Gibson | $325,000 | 1 unit |
| Leonard W. Edwards | $500,000 | 3 units |
| Michael Hedgepeth | $500,000 | 3 units |
| TayMay, LLC | $115,000 | 2 units[1] |
| BAC, LLC | $450,000 | 1 unit |
| Cagle and Locke Properties, LLC | $400,000 | 1 unit[2] |
| G. Frank Cagle and Nancy N. Cagle | $50,000 | 1 unit |
| Ronald Davis Locke and Gayle T. Locke | $50,000 | 1 unit |
| Douglas and Roxanne Parsons | $375,000 | 1 unit |
| Berkley and Susan Skinner | $305,000 | 1 unit |

The debtor and each claimant entered into real estate purchase agreements identifying the purchase price and the units to be acquired. Shearin also acquired institutional lender financing from RBC to fund the balance of the construction project, and it appears to be undisputed that RBC was advised that several individuals had paid in full for the pre-purchase of specific units.

The purchasers filed claims in Shearin's bankruptcy case for the amounts paid to the debtor, alleging that their claims were secured based on theories of resulting trust, constructive trust, and equitable lien. The debtor objected to the claims, contending that the claimants hold only general

---

[1] TayMay, LLC and BAC, LLC filed a joint proof of claim for $565,000, related to the purchase of 3 units.

[2] The Cagles, Lockes, and Cagle and Locke Properties, LLC, filed a joint proof of claim in the amount of $500,000 related to the purchase of 3 units.

unsecured claims in the amounts set forth in their proofs of claims, and disputing the characterization of claims as secured. Because the facts are undisputed and the court may rule on the motion as a matter of law, Shearin and the purchasers filed cross-motions for summary judgment.

Each of the purchasers' bases for asserting a secured claim must fail. A resulting trust arises "when a person becomes invested with title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. . . . It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another." Miller v. Rose, 138 N.C. App. 582, 590, 532 S.E.2d 228 (2000) (citations omitted). The funds paid to the debtor were to be used for the acquisition and construction of the project as a whole, and they were used for that purpose. The purchasers admit that they cannot trace their funds to a particular building, much less a particular unit. Because the funds cannot be traced, a resulting trust was not created.

A constructive trust "arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship." Miller, 138 N.C. App. at 591, 532 S.E.2d at 234 (citations omitted). There has been no allegation of fraud; instead, it is the operation of bankruptcy law that has prevented the debtor from performing under the contract. Thus, a constructive trust does not arise under the facts of this case.

An equitable lien "may arise from an agreement which shows an intention to charge some particular property with a specific debt or obligation or may be declared by a court of equity out of the general considerations of right and justice as applied to the relations of the parties and the

3

circumstances of their dealings." In re Surplus Furniture Liquidators, Inc. of High Point, 199 B.R. 136, 144 (Bankr. MD.N.C. 1995). Although well familiar with the principles of equitable liens, this court could find no authority to impose an equitable lien on real property, and an equitable lien does not arise here.

Nothing else appearing, it would seem that the debtor's objection would have to be sustained and the claims treated as unsecured. However, in North Carolina a contract for the purchase of real property is enforceable by specific performance if there has been no fraud, mistake, undue influence or oppression, or if it is not otherwise inequitable to enforce specific performance of the contract. Hutchins v. Honeycutt, 286 N.C. 314, 318-19, 210 S.E.2d 254, 257 (1974) (citations omitted). Neither a "bad bargain" or a "mere inadequacy of price" will be enough by itself to render the contract unenforceable. Knott v. Cutler, 224 N.C. 427, 432, 31 S.E.2d 359, 361 (1944). It is evident that the individuals who paid the full purchase price for the condominium units, and who have a written contract for the purchase of those units, are entitled to specific performance by the debtor.[3]

The consequence of having a specifically enforceable contract is that it may not be a "claim" under the Bankruptcy Code. Section 101(5) defines "claim" as

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) *right to an equitable remedy for breach of performance if such breach gives rise to a right of payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

---

[3] To the extent the debtor maintains that these contracts are executory and subject to rejection by the debtor, there is no performance remaining by the buyers that would render the contracts executory. See Mitchell v. Streets (In re Streets & Beard Farm Partnership), 882 F.2d 233 (7th Cir. 1989); In re Ter Bush, 273 B.R. 625 (Bankr. S.D. Cal. 2002).

11 U.S.C. § 101(5) (emphasis added). Thus, in order to be a claim, a right to an equitable remedy must also give rise to an alternative right of payment of equal value to the claimant. It is generally accepted that a legal remedy of money damages is not sufficient to compensate a buyer of real property for breach by the seller. See Texaco, Inc. v. Creel, 310 N.C. 695, 706, 314 S.E.2d 506, 512 (1984) (citations omitted). Creditors are generally not required to elect money damages if that remedy is inferior. See Sheerin v. Davis (In re Davis), 3 F.3d 113, 116-17 (5th Cir. 1993) (citations omitted). Here, the purchasers' rights are claims under the Bankruptcy Code only if they choose to pursue a right to payment. The purchasers stated clearly at the hearing that they wanted the units they contracted to purchase. Should the purchasers choose to seek a monetary claim against the debtor, that claim is unsecured, but they are entitled to seek specific performance. To the extent they have elected that remedy, they do not have a claim in the bankruptcy case.

With certain exceptions, § 1141 provides that confirmation of a plan discharges the debtor from debts that arose preconfirmation. "Debt" means liability on a claim. 11 U.S.C. § 101(12). Because the right to specific performance is not a claim, the obligation of the debtor to perform is not a "debt" and is not dischargeable. See Crafts v. Pitts, 162 P.3d 382, 389 (Wash. 2007) (defendant's contractual obligation to quitclaim property survived bankruptcy discharge) (citations omitted). Instead, the obligation to deliver the condominium units simply survives the bankruptcy proceeding.

Based on the foregoing, the debtor's objection to the claims of T. Stewart Gibson (Claim Nos. 8 and 32), Leonard W. Edwards (Claim No. 15), Michael Hedgepeth (Claim No. 16), TayMay, LLC (Claim No. 17), BAC, LLC (Claim No. 17), Cagle and Locke Properties, LLC (Claim No. 20), G. Frank Cagle and Nancy N. Cagle (Claim No. 20), Ronald Davis Locke and Gayle T. Locke

(Claim No. 20), Douglas and Roxanne Parsons (Claim No. 21), Berkley and Susan Skinner (Claim No. 22) is **ALLOWED**, but only insofar as the interests asserted are not claims pursuant to § 101(5), and, to the extent the purchasers choose to pursue money damages, the remaining claims are unsecured. Nothing in this order prejudices their entitlement to specific performance of the purchase agreements.

The debtor's lender, RBC, holds a first priority lien on all of the property. How its interests intersect with those of the purchasers who are entitled to the specific condominium units is not before the court, but remains to be considered at another time.

**END OF DOCUMENT**